UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLES S. SAAD,

        Plaintiff,

v.

        Case Number: 13-12275
        Honorable Julian Abele Cook, Jr.

AURORA LOAN SERVICES, LLC,

        Defendant.

ORDER

On April 29, 2013, the Plaintiff, Charles Saad, filed this lawsuit in the Macomb County Circuit Court of Michigan, in which he sought to enforce the terms of a contract against the Defendant, Aurora Loan Services, LLC. ("Aurora Loan")  Thereafter, Aurora Loan caused the lawsuit to be removed from the state court to this Court on the basis of its diversity jurisdiction. 28 U.S.C. § 1332. Currently before the Court is Aurora Loan's motion to dismiss brought pursuant to Fed.R.Civ.P 12(b)(6), contending that the Plaintiff has failed to state a claim upon which relief can be granted. (ECF No. 3).

I.

This lawsuit stems from a series of negotiations between Saad and his lender for the purpose of repurchasing his foreclosed property. On October 12, 2005, he and a third party executed a mortgage and note for $513,000 which ostensibly secured a certain parcel of real estate in Chesterfield Township, Michigan. This mortgage was subsequently assigned to Aurora Loan which later complained that Saad had failed to fully satisfy the terms of his mortgage obligations. Following

Saad's claimed default on the mortgage, Aurora Loan commenced statutory foreclosure proceedings and ultimately purchased the Chesterfield property at a sheriff's sale for $259,000. (Compl. ¶¶ 10, 11). Saad responded to Aurora Loan's actions by filing a lawsuit in the Macomb County Circuit Court wherein he cited to alleged irregularities in the foreclosure process. However, when these efforts by Saad failed to produce any positive results, the parties exchanged email correspondence in attempt to settle the matter short of the Defendant taking possession of the Chesterfield property.

The parties settlement negotiations appear to have started in the autumn months of 2012, and are summarized as follows:[1]

> October 16, 2012: Saad's counsel ("Geyer") writes to the counsel for Aurora Loan ("Scott"), noting that "Mr. Saad had offered $275,000 as a cash payment to purchase the residence and conclude this matter. Have you heard . . . whether this offer is acceptable?" (Compl. Exhibit 1).
>
> October 18, 2012: Scott responds to Geyer and requests "a written offer as well as proof of funds." *Id.*
>
> October 26, 2012: Geyer writes, "[y]ou have asked for proof that the $50,000 down payment exists. It is sitting in a bank account . . . see attached." *Id.*
>
> February 4, 2013: Following Aurora Loan's inspection of the property, Scott responds to Geyer: "My client is willing to accept the offer to purchase the property by your clients. However, the following are the terms that will govern this settlement." *Id.* The subject of the email also changes from Re: "Saad vs. Aurora - interior inspection," to Re: "Saad v. Aurora - *offer* to purchase." (Compl. Exhibit 2) (emphasis added).
>
> February 6, 2013: Hearing no response, Scott follows-up with Geyer two days later and specifically asks "Do we have a deal? If so, I'll

---

[1] A court may, upon its evaluation of a motion to dismiss, consider the complaint as well any documents referenced therein. *Amini v. Oberlin College,* 259 F.3d 493, 502 (6th Cir. 2001).

prepare the settlement agreement." *Id.*

February 6, 2013: Geyer, responding on the same day, states that "[b]ecause your client took so long to get back to me, [my] client has to reconfirm the money is still available. I'll get back to you shortly." *Id.*

February 20, 2013: Two weeks later, hearing nothing from Geyer, Scott requests a status update. *Id.*

February 21, 2013: In response, Geyer states only that "[w]e are on target to close. It may not be exactly on March 4, but we'll be close to that date." *Id.*

April 4, 2013: Presumably in response to some communication which was not attached to the Complaint, Aurora Loan's new counsel writes to Geyer, stating that, "I spoke to my client and [Scott] and confirmed that there are no offers being considered for your client to purchase the property. As such, I am being directed to proceed with the scheduled hearing" to obtain possession of the Chesterfield property. (Compl. Exhibit 3).

April 4, 2013: In the last communication attached to the Complaint, Geyer responds to the above message, noting that "an offer was accepted to purchase the property for the sum of $275,000. We are prepared to close this transaction." *Id.*

On April 9, 2013, following a hearing in a state district court, Aurora Loan obtained a judgment of possession in favor of the Chesterfield property. Three weeks later, Saad filed the present action in Macomb County Circuit Court, asserting that the above cited correspondence between the parties constituted a binding contract to sell the Chesterfield property which entitled him to specific performance. Prior to the litigation being removed to this federal court, Saad obtained an injunction which prevented Aurora Loan from executing on the judgment of possession. He now seeks to obtain an order that, if granted, will compel Aurora Loan to sell the Chesterfield property according to the terms within the email correspondence.

II.

When considering a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court accepts the plaintiff's well-pleaded allegations as true and construes each of them in a light that is most favorable to it. *Bennett v. MIS Corp.*, 607 F.3d 1076, 1091 (6th Cir. 2010). However, this assumption of truth does not extend to a plaintiff's legal conclusions because "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint "must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008) (citation and internal quotation marks omitted).

In order to survive a motion for dismissal, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this standard, the "plaintiff [must] plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In essence, "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

In considering a 12(b)(6) motion, "documents attached to the pleadings become part of the pleading and may be considered." *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007) (citing Fed. R. Civ. P. 10(c)). "In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001) (emphasis

omitted))). Moreover, "documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claim." *Weiner, D.P.M. v. Klais & Co.*, 108 F.3d 86, 88 n.3 (6th Cir. 1997); *see also Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008).

## III.

In cases where jurisdiction is premised upon the diversity of the parties, the Court applies the substantive law of the forum state. *See Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78 (1938). It is undisputed that, following Saad's original offer on October 16, 2012, a series of emails were exchanged between the parties' representatives. *See* (Compl. Exhibits 1-3). Aurora Loan maintains that, notwithstanding its belief that the email correspondence had failed to satisfy the statute of frauds, Saad's original offer was never validly accepted. As such, Aurora Loan asserts that its response to Saad's correspondence was merely a counter-offer which was never accepted.

As a preliminary matter, the Court notes that there is a "distinction between the *form* of a contract for the sale of land and the substance of that contract." *Zurcher v. Herveat,* 605 N.W.2d 329, 334 (Mich. App. Ct. 1999) (emphasis in original). The statute of frauds requires that the sale of land or any interest in land must be "in writing, and signed by the party to whom the lease or sale is to be made, or by some person thereunto by him lawfully authorized in writing." Mich. Comp. Laws. § 566.108. The substance of a binding contract for the sale of land, on other hand, is a separate subject from its sufficiency under the statute of frauds, and is governed by the contract law principle that "there must be a meeting of the minds regarding the 'essential particulars' of the transaction.'" *Zurcher,* 605 N.W. at 335. The Court will address each of these issues in turn.

The primary purpose of the statute of frauds is to (1) prevent fraud between parties of certain

contracts and (2) "prevent disputes over what provisions were included in an oral contract." *Jim–Bob, Inc. v. Mehling,* 443 N.W.2d 451, 456 (Mich. Ct. App. 1989). For these reasons, to "satisfy the statute of frauds, the writing or memorandum must be certain and definite as to the parties, property, consideration, premises and time of performance." *Marina Bay Condos., Inc. v. Schlegel,* 423 N.W.2d 284, 287 (1988). On October 16, 2012, the Plaintiff's attorney ("Geyer") sent an e-mail to the Defendant's attorney ("Scott") stating that, "Mr. Saad had offered $275,000 as a cash payment to purchase the residence and conclude this matter." (Compl. Exhibit 1). An attorney has the apparent authority to settle a lawsuit on behalf of his or her client. *Nelson v. Consumers Power Co.,* 497 N.W.2d 205, 208 (Mich. Ct. App. 1993). Thus, the e-mail from Geyer constituted a settlement offer. *See Eerdmans v. Maki*, 573 N.W.2d 329, 332 (1997) (defining an offer as "the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it."). Scott acknowledged her receipt of the offer and, in the email exchange that followed, the parties reasonably satisfied the core requirements of the statute of frauds; namely (1) the property, identified as "Mr. Saad's residence", (2) the consideration to be tendered, $275,000, and (3) the relative time for performance: i.e, immediately upon acceptance.

Finding that the email exchange satisfied the statute of frauds, and the required *form* of a contract for the sale of land, the next question becomes whether the agreement was *substantively* binding pursuant to general contract law principles. "Before a contract can be completed, there must be an offer and acceptance. Further, a contract requires mutual assent or a meeting of the minds on all the essential terms." *Kloian v. Domino's Pizza, LLC,* 733 N.W.2d 766, 770 (Mich. Ct. App. 2006). In the context of a contract for the sale of land, the essential terms are "the identification of (1) the property, (2) the parties, and (3) the consideration." *Zurcher,* 605 N.W.2d at 341. Furthermore, to

establish mutual assent, "[t]here must be no variance between the acceptance and the offer. Accordingly a proposal to accept, or an acceptance, upon terms varying from those offered, is a rejection of the offer, and puts an end to the negotiation, unless the party who made the original offer renews it, or assents to the modification suggested." *Harper Bldg Co. v. Kaplan*, 52 N.W.2d 536, 538 (Mich. 1952); *see also Kamalnath v. Mercy Mem Hosp Corp.*, 487 N.W.2d 499, 503 (Mich. Ct. App. 1992) (citations omitted) ("A counter proposition is not an acceptance. Mere discussions and negotiation, including unaccepted offers, cannot be a substitute for the formal requirements of a contract.").

While both parties agree that the October 16, 2012 correspondence from Geyer to Scott constituted a valid offer, they disagree with respect to whether the offer was actually accepted. In order to answer this question, the Court looks to the four email messages exchanged between the parties, bearing in mind that "[a] meeting of the minds is judged by an objective standard, looking to the express words of the parties and their visible acts, not their subjective states of mind." *Kloian v. Domino's Pizza, LLC,* 733 N.W.2d at 771. (internal quotation and citation omitted). The first of the relevant messages–the purported acceptance–is worthy of reproducing in its entirety here:

> My client *is willing* to accept the offer to purchase the property by your clients. *However*, the following are the terms that will govern this settlement: Seller's addendum (attached)[;] Non disclosure and no contest stipulations including dismissal of the current case including a settlement agreement and release of claims. Your clients must agree to dismiss their appeal and the closing must occur by the date set forth in the addendum. If your clients cannot close for any reason, they agree to sign a consent judgment giving my client immediate right to possession. Current preapproval[;] Current proof of funds [and] EMD made payable to Potestivo & Associates PC[.] Please provide me with the requested documents and I will work on the settlement agreement. (Compl. Exhibit 2) (emphasis added).

Saad maintains that the very first sentence of Scott's response is all that is necessary to establish the acceptance by Aurora Loan in this case. This approach, however, not only runs afoul of the most basic tenets of contract interpretation, it requires the Court to ignore the numerous conditions contained in Scott's response. Indeed, as the history of the parties' relationship makes clear, this was not simply a negotiation to sell a parcel of real estate. At this juncture, the parties had been enthralled in litigation for over three years. Perhaps not surprisingly, therefore, Scott premised the acceptance by Aurora Loan of Saad's offer on, *inter alia*, the dismissal of all pending litigation and a release of claims. The addition of this provision clearly changed the consideration to be tendered for the Chesterfield property, and was thus "essential" to the transaction. As such, the Court finds that Aurora Loan's response operated as a counteroffer.

This interpretation of the response by Aurora Loan is further bolstered by the communication that followed. On February 6, 2013, Scott sent a follow-up email to Geyer specifically asking, "Do we have a deal? If so, I'll prepare the settlement agreement." (Compl. Exhibit 2). Geyer responded by noting that "[b]ecause your client took so long to get back to me, [my] client has to *reconfirm* the money is still available. I'll get back to you shortly." *Id.* (emphasis added). Thus, Geyer clearly understood that the settlement would not proceed absent some confirmation from his client–communicated to Scott–that he was willing/able to proceed with the new terms. The only follow-up from Geyer came on February 21, 2013 wherein he noted that, "[w]e are on target to close." *Id.* This statement is, at a minimum, ambiguous with respect to whether Saad agreed to Aurora Loan's counteroffer. *See Eerdmans v. Maki,* 573 N.W.2d 329, 332 (Mich. Ct. App. 1997) ("Acceptance must be unambiguous and in strict conformance with the offer.") (internal quotation and citations omitted).

Finally, although not essential to the analysis by the Court, Aurora Loan's new counsel (Courtney Krayse) sent an email to Geyer on April 4, 2013, noting that "there are no offers being considered for your client to purchase the [Chesterfield property]. As such, I am being directed to proceed with the scheduled hearing." (Compl. Exhibit 3). On the same day, Geyer forwarded Krayse's message to one of his colleagues along with the note that, "[t]his is the email that I received after I spoke with [Krayse] to request a 30-day extension to close on the house. *She's right that there is no pending offer on the table that has been accepted*- they wanted proof of funds from us that we could close which we did not show we could close." *Id.* (emphasis added). Geyer's message only further substantiates that which the objective evidence in the record already confirms: namely, that Scott's response was merely a counteroffer which was never accepted. Accordingly, Saad's claims for breach of contract and specific performance must and do fail.[2]

In Saad's only remaining claim, he requests injunctive relief to prevent Aurora Loan from taking possession of the Chesterfield property. (Comp. ¶24-31). "It is well settled that an injunction is an equitable remedy, not an independent cause of action." *Terlecki v. Stewart*, 754 N.W.2d 899, 912 (Mich. Ct. App. 2008). Here, the Court has determined that both of Saad's causes of action are legally devoid of merit. As such, equitable relief in the form of an injunction is unavailable.

---

[2] In light of the conclusions by the Court, it is unnecessary to consider the merit of the alternative argument by Aurora premised under Mich. Comp. Laws § 566.132(2).

IV.

For the reasons thus stated, the motion to dismiss by Aurora Loan is granted. (ECF No. 3).

This Order closes the case in its entirety.

IT IS SO ORDERED.

Date: March 31, 2014                                         s/Julian Abele Cook, Jr.
                                                             JULIAN ABELE COOK, JR.
                                                             United States District Judge

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on March 31, 2014.

                                                             s/ Kay Doaks
                                                             Case Manager